IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 07-24ML |
| | : | |
| SAMUEL SACCO | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR A SENTENCE BELOW THE GUIDELINE RANGE

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Lee H. Vilker, Assistant United States Attorney, and hereby objects to the Defendant's Motion For A Sentence Below the Guideline Range for the reasons set forth in the accompanying Memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
lee.vilker@usdoj.gov

Dated: July 24, 2007

**CERTIFICATE OF SERVICE**

I, hereby certify that on this 24th day of July, 2007, I caused the within Government's Memorandum of Law to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

James W. Ryan, Esquire
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

I further certify that a copy was mailed via regular mail to:

Dennis Jenkins
United States Probation Officer
John O. Pastore Federal Building
Two Exchange Terrace
Providence, RI 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 07-24ML |
| | : | |
| SAMUEL SACCO | : | |

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION

TO DEFENDANT'S MOTION FOR A SENTENCE BELOW THE GUIDELINE RANGE

Defendant Samuel Sacco ("Sacco") has moved this Court for a sentence below the range of sentences as determined under the United States Sentencing Guidelines. As defendant has phrased his motion as both a downward departure motion under the Guidelines and a variance from the Guidelines under Booker, the Government will address the departure and variance arguments separately. As set forth below, the United States opposes defendant's motion for a downward departure as defendant's family circumstances and charitable activities do not take this case out of the heartland. With respect to defendant's Booker motion, the United States believes that defendant's repeated and long-standing acts of fraud, when combined with the trust he abused, warrant a sentence at the bottom of the Guideline range.

*Argument*

As the Court is aware, defendant Sacco is before the Court because he engaged in a five year mail and wire fraud scheme in which he systematically and continuously pillaged the funds of the company he was hired to safeguard. From March 2001 through May 2006, Sacco engaged in three different schemes that ultimately cost Spectra Systems Corporation ("Spectra") more

than $700,000. These schemes included charging almost $400,000 in personal expenses on his corporate American Express card without identifying these expenses as personal to his employer. These personal expenses included airline tickets for family members, liquor products, health and beauty products, family vacations to Key West, Orlando, New Hampshire and Nantucket, jewelry and electronics. (PSR ¶ 10) In addition, as C.F.O. of Spectra, Sacco caused to be issued numerous accounts payable checks for unauthorized personal expenses, including country club fees and life insurance premiums. (Id.) Finally, Sacco abused the discretion that was provided to him by giving himself unauthorized annual bonuses totaling $266,325.77 from 2002 through 2005. (Id.) In each of these schemes, Sacco took advantage of his knowledge of the inner-working of Spectra and exposed its vulnerabilities to his personal advantage.

A. Downward Departure Motions

Defendant moves for a downward departure pursuant to U.S.S.G. § 5H1.6 (family ties) and U.S.S.G. § 5H1.11 (charitable acts). Defendant's downward departure motions should be denied. The Guidelines provide that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." (U.S.S.G. § 5H1.6) This is so because a criminal sentence, by definition, almost invariably devastates the defendant's family members. Although the effects of a sentence of incarceration will undeniably be significant for Sacco's wife and daughter, they do not rise to the level of "extraordinary" hardship that would justify a departure under the Guidelines. See, e.g., United States v. Louis, 300 F.3d 78, 81-84 (1st Cir. 2002) (holding that "family circumstances" downward departure under USSG 5H1.6 is appropriate only in truly extraordinary cases of hardship and surveying First Circuit case law to illustrate point); United States v. Bogdan, 284 F.3d 324, 329 (1st Cir. 2002) (fact that defendant

was "caring and generous father to two adult children who live in distant cities" was insufficient to warrant departure); United States v. Pereira, 272 F.3d 76, 80-83 (1st Cir. 2001) (reversing downward departure because defendant was not an "irreplaceable" caregiver in light of alternative sources of care); United States v. Chestna, 962 F.2d 103, 107 (1st Cir.) (hardship caused by incarcerating single mother with four young children insufficient to warrant departure), cert. denied, 506 U.S. 920 (1992); and United States v. Carr, 932 F.2d 67, 72 (1st Cir.) (reversing downward departure where both parents were to be imprisoned but child could be raised by grandparent), cert. denied, 502 U.S. 834 (1991).

Defendant's argument for a departure for charitable activities fares no better. While defendant's establishment of a charitable fund in the name of his daughter and contributions to a numbers of charitable organizations is indeed commendable, they do not rise to a level sufficient to justify a departure under the Guidelines. Indeed, Guideline section 5H1.11 specifically provides that "military, civic, charitable or public service . . . contributions, and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." In United States v. DeMasi, 40 F.3d 1306, 1323-24 (1st Cir. 1994), the Court of Appeals noted that a departure for charitable works is a discouraged ground for departure under the Guidelines, holding that a discouraged-feature departure is warranted only if the "nature and magnitude" of the feature's presence is "unusual or special." Id. To make this determination, a court must ask "whether the case differs from the ordinary case in which those [discouraged] features are present." The DeMasi court reversed the decision of the district court granting the departure, holding that it was improper to depart because defendant's "charitable work and community service stood apart from what one would expect of the 'typical bank robber." Id. Rather, defendant should have been compared to

defendants from other cases who "similarly had commendable community service records." Id. See also United States v. Tocco, 200 F.3d 401, 434 (6th Cir. 2000) (when considering a departure for defendant's community service or good works, a court must distinguish between contributions of time and energy versus simply money; if mostly the latter, "then the factor could really be considered one involving [defendant's] socio-economic status, i.e., his wealth and his ability to donate to various civic and charitable causes. Consideration of that factor is prohibited by the guidelines.").

In support of his motion for downward departure, defendant notes that he established a fund in the name of his daughter at Children's Hospital in Boston and that he participated in a number of non-for-profit organizations over the years. While by no means attempting to diminish the value of these activities, the United States does note that, with the exception of the establishment of the fund at Children's Hospital in Boston and some limited activities at Hasbro's Children Hospital, all of the charitable work cited by defendant took place before the offense conduct in this case (2001-2006). Moreover, there is no indication of the amount of time and energy defendant devoted to these activities. In short, while the United States recognizes that defendant's good works may properly be considered when fashioning a reasonable sentence, they are not so "unusual" or "special" as to warrant a departure under the Guidelines.

B. Defendant's Request for a Variance from the Guidelines

Defendant next argues for a variance from the Guideline sentence under United States v. Booker, 543 U.S. 220 (2005). For reasons explained below, the United States submits that a sentence at the low-end of the Guideline range (33 months) is appropriate.

In determining a particular sentence to impose, a sentencing court "shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

© to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner."

18 U.S.C. § 3553(a).

A review of these factors supports a sentence for Sacco within the Guideline range. As noted above, the crimes defendant committed were of long duration and careful preparation. During a 5 year period, he engaged an incessant pattern of mail and wire fraud, in which he abused the trust that was given to him by Spectra officials. He meticulously learned the inner-workings of Spectra's business, then exploited that knowledge to his personal benefit. In the process, he stole more than $700,000 from Spectra.

In support of a variance, defendant points to a number of factors, including the support he receives from his family and community, the tragic nature of his daughter's death, his charitable work, and the emotional and financial impact this conviction will have on his family. The Government does not intend to discount the significance of these factors. To the contrary, it is obvious from the letters submitted to the Court that Sacco has earned the love and respect of those around him.

The Government submits, however, that Sacco's positive traits are counter-balanced by his insatiable desire to embezzle funds from his employers. The facts of the instant case do not paint the picture of a weak man who made one or two errors in judgment in the face of personal adversity. To the contrary, although Sacco was receiving a good salary, he engaged in a variety of long-lasting schemes designed to steal hundreds of thousands of dollars from those who placed corporate funds under his care.

Moreover, defendant's defrauding of Spectra does not appear to be an isolated occurrence. To the contrary, the evidence suggests that Sacco embezzled funds of another company that placed its trust in him. Before Sacco began his employment at Spectra, he was employed as the C.F.O. for a Marlborough, Massachusetts company called Civigenics. (PSR ¶ 49). As the Pre-Sentence Report indicates, Sacco admitted to submitting false personal vouchers for items that had already been purchased by the company. (Id.) The defendant executed an Agreement with Civigenics in which the defendant acknowledged that he improperly diverted to his personal use $42,820.45 in company funds. (A copy of the Agreement is attached as Exhibit A.)

While defendant Sacco no doubt has some very positive inter-personal skills, he has unfortunately used those skills to obtain positions of trust within corporations and to exploit vulnerabilities in those businesses to his personal benefit. The seriousness of the offense, the likelihood of recidivism, the need to punish the defendant, the need to deter others and the need to protect the public, all require a significant sentence of incarceration. A sentence of 33 months, the low-end of the Guideline range, is warranted.

*Conclusion*

Defendant Sacco engaged in a 5-year scheme to abuse the trust placed upon him by pillaging the funds of Spectra. He apparently engaged in similar conduct with another employer as well. A sentence at the low end of the Guideline range is necessary to promote respect for the law, to punish defendant for his crimes and to deter the defendant and others from engaging in similar conduct in the future. Accordingly, defendant's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/Lee H. Vilker

LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
lee.vilker@usdoj.gov

Dated: July 24, 2007

## CERTIFICATE OF SERVICE

I, hereby certify that on this 24th day of July, 2007, I caused the within Government's Memorandum of Law to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

James W. Ryan, Esquire
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

I further certify that a copy was mailed via regular mail to:

Dennis Jenkins
United States Probation Officer
John O. Pastore Federal Building
Two Exchange Terrace
Providence, RI 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov