# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CR No. 07-024-ML-LDA |
| SAMUEL A. SACCO | |

## SENTENCING MEMORANDUM OF SAMUEL A. SACCO

## I. INTRODUCTION

On April 16, 2007 Defendant Samuel A. Sacco appeared before the District Court and pled guilty to violations of 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C. § 1343 (Wire Fraud). The Presentence Investigation Report ("PSR") has recommended a Total Offense Level of 20. This calculation uses a Base Offense Level of 7, United States Sentencing Commission Guideline ("Guideline") § 2B1.1 and a 14 point Specific Offense adjustment pursuant to Guideline § 2B1.1(b)(1)(H), as well as a 2 point adjustment for the Defendant's role in the offense pursuant to Guideline § 3B1.3, with a downward adjustment of 3 points for acceptance of responsibility pursuant to Guideline § 3E1.1. Mr. Sacco does not dispute the mathematical calculation which resulted in the Total Offense Level as described. However, he requests that this Court take into account Mr. Sacco's charitable work and family circumstances and consider reducing the Total Offense Level pursuant to Guideline § 5K2.0. Further, under the facts presented in this case, Mr. Sacco believes that the Guidelines fail to properly reflect factors set forth in 18 U.S.C. § 3553 with respect to this offense and the background of Mr. Sacco. Mr. Sacco requests that the Court consider exercising its discretion and impose a sentence less than the Guideline range which calls for incarceration of anywhere from 33 to 41 months.

## II. LEGAL ANALYSIS

A. The Role of the Guidelines – the Impact of *Rita v. United States*

On June 21, 2007, the United States Supreme Court rendered a decision in the matter of *Rita v. United States of America*, ___ U.S.___, 127 S.Ct. 2456 (2007) ("*Rita*"). The decision in *Rita* made it clear that appellate courts may use a presumption of reasonableness where sentences upon review were imposed within the applicable range under the Guidelines. The Supreme Court's decision in *Rita* while clearly signaling approval of the Guidelines at the appellate level also serves to underscore the continued validity at the trial court level of the earlier Supreme Court Decision in *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738 (2005) "*Booker*" in which the Supreme Court severed and excised portions of 18 U.S.C. § 3553(b)(1), thereby effectively making the Guidelines "advisory". *Booker* at 756-7. According to the *Booker* Court, 18 U.S.C. § 3553 (Imposition of a Sentence) requires a court to consider the sentencing Guideline ranges but, also permits the court to tailor the sentence in light of other statutory considerations as well.

Thus, while *Rita* makes it clear that the Guidelines are still a significant and important part of the sentencing process, it is also clear that the presumption of reasonableness for a Guideline suggested sentence does not apply in the District Court. The presumption of reasonableness operates only at the appellate level and the sentencing judge is required to entertain arguments that the Guidelines should not apply because a particular case warrants a different sentence regardless of the Guideline. The sentencing court may not rely on a legal presumption that the Guideline sentence should apply. *Rita* at 24.

While appellate courts may adopt a presumption of reasonableness for Guideline sentences, that does not mean that there is any presumption of unreasonableness for sentences that are outside the Guideline. Thus, there is no presumption that the Guidelines themselves are

reasonable. The sentencing court must make its own independent findings. If anything, the decision in *Rita* has restated and re-enforced the holding in *Booker* that, at the district court level, the Guidelines are truly advisory. *Id.* at 30. Following *Booker*, but prior to *Rita*, in *United States v. Jimenez-Beltre*, 440 F.3d, 514, 518 (1st Cir. 2006), the First Circuit held that the Guidelines were an important consideration in sentencing but not "presumptively controlling" or "*per se* reasonable." *Id.* Nevertheless, the Guidelines are still generalizations that can point to outcomes which while trial courts should "give them substantial weight, ... they don't have controlling weight; and if they are clearly identified and for pervasive reasons why [a District Court] should not impose a Guideline sentence, as a result *Booker's* remedial solution makes it possible for courts to impose non-Guideline sentences that override the Guidelines, subject only to the open review of reasonableness. *Id.*

B. Departures From the Guideline Range

Parts H and K of the Sentencing Guidelines describe a variety of factors which the Sentencing Commission either favored or disfavored, or even rejected, as a basis for a sentencing departure from the Guideline Range. After *Booker*, these factors too, and the weights ascribed to them, are only advisory. Thus, the First Circuit has observed that "a factor which is discouraged or forbidden under the Guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the Guidelines. The Guidelines – being advisory – are no longer decisive as to factors any more than as to results." *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006).

Although permissible, a downward departure as a result of family ties and responsibilities is discouraged by Guideline § 5H1.6. Nonetheless, departures for exceptional circumstances are allowed. To warrant a departure, a circumstance must "render the case atypical and take it out of the 'heartland' for which the applicable guideline was designed."

*United States v. Carrion-Cruz*, 92 F.3d 5,6 (1st Cir. 1996). Nonetheless, family circumstances have been held to justify such a departure in circumstances where a defendant was found to be "so irreplaceable that incarceration would cause exceptional hardship to his family." *United States v. Sclam,* 997 F.3d 970, 974 (1st Cir. 1993). Likewise, charitable acts are also discouraged from consideration under Guideline § 5H1.11 yet, under particular circumstances, have been held to justify a downward departure. *United States v. Rioux*, 97 F.3d 648, 663 (2nd Cir. 1996).

C. 18 U.S.C. § 3553 – Imposition of a Sentence

In *Rita*, the Supreme Court noted that statutes such as 28 U.S.C. § 991(b) mandate that the U.S. Sentencing Commission write Guidelines that will carry out the same sentencing objectives as set forth in 18 U.S.C. 3553(a).

Thus, the sentencing statutes envision that both the sentencing judge and the Sentencing Commission carry out the same basic objectives "the one, at Retail, and the other at Wholesale." *Id.* at 19. Nonetheless, this is not always the result.

18 U.S.C. § 3553(a) directs that the court should impose a sentence sufficient, <u>but not greater than necessary</u> to comply with the purposes set forth in paragraph 2 of that section. Effectively a sentence should be no higher than needed to meet statutory goals. *United States v. Scherrer*, 444 F.3d 91, 95 (1st Cir. 2006). (Emphasis added).

Subsection (2) requires sentences which:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner.

The sentencing court is required to consider the "nature and circumstance of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Thus, the court is required to give comparable weight to the history and characteristics of the defendant as well as the nature and circumstances of the offense. Other factors such as the history and character of the particular defendant, the family obligations, a lifetime of charitable and community activities, as well as the collateral impact on the defendant's family, such as financial disaster are now either relevant where they were not before, or else may be weighted more heavily than the Guidelines suggested. *United States v. Ranum*, 453 F. Supp. 2nd 984. 990-991 (E.D. Wis. 2005)

In this matter the recommended sentencing range, as calculated by the Guidelines, fails to reflect factors appropriate for consideration under 18 U.S.C. § 3553(a) as follows:

(i) The Nature and Circumstances of the Offense

Both wire fraud and mail fraud are very serious offenses. While at first blush, the offense itself appears to be monetarily significant, the facts reveal that it is not the result of any complicated scheme or conspiracy but actually the result of the accumulation over many years of numerous incidents of relatively petty indebtedness, none of which were concealed at the time and all of which appeared in the books, records and business reports of the employer in the normal course of events. The funds in question were not spent on a lavish lifestyle or to indulge some addictive vice but rather to support and entertain family and loved ones, especially in difficult times. While Mr. Sacco takes responsibility and does not suggest that his employer should bear the cost of the personal meals and travel, it is worth noting that in virtually every instance these expenditures were made not for the benefit of Mr. Sacco, but rather inured to the benefit of those around him. Given his position it is odd that Mr. Sacco's crime related to a personal weakness, he uncharacteristically spent too much and was not very good handling his

own money for a period of time. Indeed, Mr. Sacco, on his own, before discovery made restitution in the amount of approximately $30,000.

(ii) The History and Characteristics of the Defendant

As set forth in the many heartfelt letters received by the Court from the friends and family of Samuel A. Sacco, his conduct in this matter was aberrant. Mr. Sacco is universally known as a kind, generous and honest man – a man of impeccable integrity who has truly touched many lives. Letters addressed to the Court recite many anecdotal tales of personal kindness and concern for others.

As noted in the PSR - and the many letters - Mr. Sacco has suffered substantial hardship in his life and has earnestly tried to be a strong parent and leader of his family. The tragic death of his daughter Allison Marie Sacco on December 10, 2003, after an abbreviated life of life-threatening treatment for a congenital heart condition known as pulmonary atresia with intact ventricular septum as well as the current illness of his daughter Elisabeth has created great strains on a man who has otherwise led an exemplary life. Mr. Sacco and his wife dealt with the tragic death of their 16 year old daughter Allison, in part, by comforting others and working toward the establishment of a fund at Children's Hospital in Boston to combat the terrible illness which took Allison's life.

Along with academic degrees and awards from fine academic institutions (College of the Holy Cross, Harvard Graduate School of Design – now known as The Kennedy School of Government), as an adult Mr. Sacco has given much back to the community.

In addition to the "Ali Fund" established in the memory of his daughter, Mr. Sacco has been extraordinarily involved his community and in the lives and activities of his daughters. Amongst the many civic and charitable organizations to which he has contributed include:

- Wakefield, MA Planning Board in 1938-85 (Secretary)
- Member of Economic Development Council in Wakefield, MA 1983-85

*Mary Mother of the Church in Newton, NH from 1986-94*
- Chairman of the Marriage Preparation Program (9 years)
- Eucharistic Minister (9 years)
- Parish Council Member (8 years)
- Finance Committee Chair (8 years)

*St. Luke Church and School in Barrington, RI*
- Family Mass Reception Host Family
- Marriage Preparation Program
- PTO President 1996-97
- School Board Member 1996-97
- Children's Mass 1996-2001

*Hasbro Children's Hospital 1996-2004*
- Chaired the 2000 Hasbro Ball
- Chaired 1999 Ball Auction
- Chaired 2001 Food Committee
- Chaired 2002 Program Book
- Chaired 2003 Volunteers
- Chaired 2004 Interactive Game

*Indian Princesses 1995-2001 (YMCA)*
- Chief-Chief of the Algonquin Nation 1998-2001
- Chief of Manissea Tribe 1996-2001
- Chair, Winter Olympics

*Barrington Town Softball 2000-2005*
- Coach of daughter's team
- Coach, Allstar and Tournament Team

(iii) Impact on the Sacco Family

The imposition of any sentence of incarceration will have a devastating impact on Mr. Sacco's family. As a financial issue, Mr. Sacco is the only wage-earner in the family. Mrs. Sacco intends to return to work as a college professor but has yet to find a position. Bills will have to be paid. The Saccos do not have extra financial resources to fall back on. The family home will have to be sold and has already been listed for sale. Mrs. Sacco and their daughter

will have to live with relatives. It is anticipated the Saccos will have to seek financial assistance for major expenses, such as the tuition for Elizabeth' junior and s senior year at Portsmouth Abbey.

The emotional impact will be even greater. Sam and Ann-Marie have been married since 1979. Together they have established a loving family and a home which has already been torn apart as result of all of this. Together they have touched the lives of many friends and neighbors. Their relationship continues to be close and supportive. As all of the letters attest, Sam is the emotional and spiritual leader of the family and the person Ann-Marie loves, depends upon and relies.

The impact on Elisabeth will be worse. As noted in the PSR, Libby suffers from Type 1 diabetes. More importantly she suffers from the memory of the loss of her older sister. These events have already taken a significant toll on Libby. Janet Oakley, the counselor at Portsmouth Abbey, notes how close Libby is to her parents and the high levels of anxiety which recently rose to "near panic levels" as a result of her father's situation. This situation was so serious that the school psychiatrist Michael Knowlton, M.D. felt it necessary to prescribe medication which Libby continues to take. Her touching letter to the court reveals the gentle intimacy of her loving relationship with her father. It is impossible to calculate the loss she will suffer. His imprisonment will be yet another unfortunate personal crisis for this young lady who is trying to recover and proceed with her life.

## III. CONCLUSION

Although the sentencing Guidelines call for incarceration of 33-41 months, in this case such a sentence would be unduly harsh. This Court has the discretion to impose a lesser sentence which would satisfy the necessary statutory considerations and serve the ends of justice.

SAMUEL A. SACCO,

By His Attorneys

PARTRIDGE SNOW & HAHN LLP

James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com

DATED: July 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20 day of July, 2007, I mailed a copy of the within Sentencing Memorandum of Samuel A. Sacco to:

Lee H. Vilker, Esq.
Assistant U.S. Attorney
United States Attorney's Office/RI
50 Kennedy Plaza - 8th Floor
Providence, RI 02903